IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-00085-RJC
(3:06-cr-00353-RJC-1)

| | | |
|---|---|---|
| JAIRO NUNEZ-SANCHEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on consideration of Petitioner's pro se Motion to

Vacate, Set Aside or Correct Sentence which he filed pursuant to 28 U.S.C. § 2255. For the

reasons that follow, Petitioner's § 2255 Motion will be dismissed.

I.      BACKGROUND

In early 2006, agents with the Drug Enforcement Administration ("DEA") in Nashville,

Tennessee, were conducting an investigation into a wide-ranging drug conspiracy that involved

the importation of black and white tar heroin from Mexico to several states within the United

States, including North Carolina. Information gained from Title III wiretaps revealed that some

of the conspirators had established a hub in the Western District of North Carolina, and an

investigation was initiated by DEA agents in this District which included additional Title III

wiretaps. Evidence from the tapped phones demonstrated that Petitioner served as a leader of the

drug conspiracy in this District and that a bulk of the heroin was stored and distributed from

Petitioner's home in Charlotte. Based on the evidence obtained through the wiretap surveillance

and other sources, a federal search warrant was obtained for Petitioner's house. DEA agents and

1

detectives with the Charlotte-Mecklenburg Police Department ("CMPD") executed the warrant and discovered nearly 70 grams of heroin, over $6,000 in cash, drug scales, a sawed off 20-gauge shotgun and a 9 mm handgun.[1]

Following the search, Petitioner was arrested and charged by the Grand Jury in this District with multiple counts related to the drug conspiracy. Petitioner entered into a written plea agreement with the Government and agreed to plead guilty to one count of conspiracy to possess with intent to distribute at least one kilogram of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One); one count of possession of a firearm during and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Five); and one count of money laundering of illegal drug proceeds, in violation of 18 U.S.C. § 1956(h) (Count Nine). (Criminal Case No. 3:06-cr-00353, Doc. No. 33: Superseding Indictment; Doc. No. 115: Plea Agreement).

Petitioner appeared before the magistrate judge for his Plea and Rule 11 hearing and he was placed under oath and the elements of Counts One, Three and Nine were explained to him and the minimum and maximum penalties. Petitioner averred that he understood the elements of the charges and the potential penalties; that he understood and agreed with the terms of his plea agreement; and that no one had promised him any particular sentence, or made any promises, that were not contained within the written plea agreement. Petitioner confirmed that he was waiving his right to contest his charges at trial and he admitted that he was in fact guilty of the charged conduct and that the factual basis for his plea could be determined by the Court during his sentencing hearing. The court's questions, along with Petitioner's answers were reduced to

---

[1] Petitioner stipulated during his sentencing hearing that the factual basis for his guilty pleas was supported by the offense conduct contained in his Presentence Report in paragraphs 8-33. (3:06-cr-00353, Doc. No. 220: Sent. Tr. at 3).

writing and presented to him. Petitioner reviewed his answers and agreed that they were true and accurate, and the court accepted Petitioner's guilty plea after finding that it was knowingly and voluntarily entered. (Id., Doc. No. 125: Acceptance and Entry of Guilty Plea; Doc. No. 238: Amended Tr. of Plea and Rule 11 Hearing).

The U.S. Probation Office prepared a presentence report ("PSR") and calculated a base offense of level of 32 under § 2D1.1 of the U.S. Sentencing Guidelines Manual ("USSG")(2006) based on the quantity of heroin that Petitioner admitted he was responsible for and a four-level increase was applied under § 3B1.1(a) because he played a role as a leader within the drug conspiracy. Petitioner was also assessed a two-level enhancement for violation of the money laundering statute. See 18 U.S.C. § 1956(h). Petitioner's total offense level was 35 after adjusting for acceptance of responsibility and when considered with Petitioner's Level I criminal history category, Petitioner's Guidelines range was 168 to 210 months' imprisonment plus the mandatory consecutive term of 5 years in prison for the § 924(c) offense. (Id., Doc. No. 166: PSR ¶ 76).

At the outset of Petitioner's sentencing hearing, the Court addressed Petitioner and he confirmed that the answers that he had provided during his Rule 11 hearing were true and that he would give the same answers if they were posed during sentencing, and Petitioner again confirmed that he was in fact guilty of the charged crimes. Petitioner stipulated that the offense conduct detailed in paragraphs 8 through 33 of his PSR established a factual basis for his guilty plea, and the Court accepted Petitioner's plea after finding that his decision to enter his guilty plea was knowing and voluntary and that there was a factual basis to support his guilty pleas.

Petitioner objected to the four-level enhancement and denied that he served as a leader in

the conspiracy although he admitted that he participated in the distribution of heroin. This objection was overruled because the evidence established that he in fact played a pivotal role in the conspiracy as a leader of the organization in this District. Petitioner was sentenced to concurrent terms of 168-months' imprisonment for the drug conspiracy charged in Count One and the money laundering conviction in Count Nine, and a mandatory consecutive term of 60 months for his § 924(c) conviction on Count Five for a total term of 228-months. (Id., Doc. No. 162: Judgment). Petitioner appealed.

Petitioner's counsel filed an Anders brief asserting that there appeared to be no meritorious issues for appeal but inquiring whether Petitioner was properly assessed a four-level enhancement for his role as a leader in the drug conspiracy.[2] Petitioner filed two pro se supplemental briefs in which he raised three issues: (1) whether his guilty plea was knowing and voluntary; (2) whether Count Five of his indictment charged him with multiple § 924(c) offenses; and (3) whether his money laundering conviction was now infirm in light of the Supreme Court's holding in United States v. Santos, 553 U.S. 507 (2008).[3]

The Court first rejected Petitioner's challenge in the Anders brief to his four-level enhancement after finding that the enhancement was not clearly erroneous and that a jury need not determine the facts necessary to support the enhancement. See United States v. Nunez-Sanchez, 453 F. App'x 319, 320-21 (4th Cir. 2011) (unpublished) (internal citations omitted). Petitioner's supplemental claims were likewise denied after the Court concluded that the court

---

[2] Anders v. California, 386 U.S. 738 (1967).
[3] In Santos, the Court reversed multiple money laundering convictions because the defendant was also convicted of running an illegal gambling business. The question turned on whether the term "proceeds" in the money laundering statute meant "receipts" or "profits." In a 5-4 decision, the Court held that the money laundering statute only pertained to the "profits" of criminal activity. Id. at 524. This holding clearly would not have applied in Petitioner's case.

conducted a thorough Rule 11 hearing which demonstrated that Petitioner understood the charges, potential penalties, and that the plea was supported by an adequate factual basis. The Court denied Petitioner's challenge to Count Five after concluding that Petitioner's guilty plea waived any challenge that Count Five charged duplicitous counts. Id. at 321. Petitioner's challenge to his money laundering conviction was also denied when the Court decided not to apply the holding in Santos to Petitioner's claim. After conducting its Anders review, Petitioner's judgment was affirmed and he did not petition the Supreme Court for a writ of certiorari.

In this collateral proceeding, Petitioner raises four claims of ineffective assistance of counsel. Petitioner's contentions will be examined below.

II.     STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

III.     DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the effective assistance of counsel to assist in his defense. U.S. Const. amend. VI. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective

standard of reasonableness," and (2) the deficient performance was prejudicial the defense.

Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance,

there is "a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on

ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v.

United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the

presumption of competency. Id.

To demonstrate prejudice in the context of a guilty plea, a Petitioner must demonstrate "a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Petitioner "bears the

burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297

(4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert.

denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need

not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at

697). In considering the prejudice prong of the analysis, the Court must not grant relief solely

because Petitioner can show that, but for counsel's performance, the outcome of the proceeding

would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the

Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding

was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369

(1993)).

A.      Ground One

Petitioner first argues that his guilty plea was not knowing and voluntary because his

6

counsel provided erroneous advice regarding the possible sentence that he would face if he chose

to plead not guilty and contest his charges at trial. (3:13-cv-00085, Doc. No. 1: Petition at 5).

Petitioner asserts that his counsel warned him that if he did not plead guilty then the Government

would file a notice of its intention to seek enhanced penalties, pursuant to 21 U.S.C. § 851, and

he could face a mandatory-minimum term of 20 years upon conviction. In particular, Petitioner

maintains that his counsel informed him that a Tennessee drug conviction or convictions made

him eligible for enhanced penalties.

This argument is plainly belied by Petitioner's sworn statements during his Plea and Rule

11 hearing where he was under oath and swore that no one had promised him any particular

sentence in exchange for his guilty plea and where Petitioner averred that he understood that he

faced a mandatory minimum term of 10-years' imprisonment upon conviction on Count One.

This argument is further undermined because it is patently incredible. Petitioner's presentence

report, to which he filed no objection save for his oral objection to the four-level enhancement,

demonstrates that he had <u>no</u> prior convictions in the United States at the time he was indicted or

prior to his guilty plea. Accordingly, even if his attorney had invented convictions in Tennessee,

Petitioner would have known that his attorney's advice was erroneous and that no such

sentencing enhancement could apply.[4] (3:06-cr-00353, Doc. No. 166: PSR ¶ 60).

A petitioner is bound by his sworn statements which he makes during a properly

conducted Rule 11 hearing and as this Court found during sentencing, and reaffirms herein,

---

[4] Petitioner also contends that his counsel did not inform him that a jury might not find him responsible for more than one kilogram of heroin. (Id. at 8). From the record, it does not appear outside the realm of professional norms to limit Petitioner's sentencing exposure based, on among other things, the overwhelming evidence of his guilt. By entering into the written plea agreement and pleading guilty Petitioner received a three-level reduction for acceptance of responsibility which would not have been possible had he maintained his innocence and contested the charges at trial. And as noted herein, Petitioner swore under oath that he was responsible for more than one kilogram of heroin.

Petitioner's Rule 11 hearing was properly conducted therefore his late, self-serving claims here must fail. See, e.g., Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005).

Furthermore, even assuming that Petitioner's assertion that his attorney misled him about his potential sentence is true, the information provided by the court during his Rule 11 hearing clearly informed Petitioner that he faced no less than 10 years and not more than life imprisonment on Count One and he averred that he understood this potential sentence. See United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995) (recognizing that "any misinformation [Petitioner] may have received from his attorney was corrected by the trial court at the Rule 11 hearing, and thus [Petitioner] was not prejudiced."); United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc), cert. denied, 513 U.S. 1060 (1994) ("[I]f the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and the defendant.").

Finally, Petitioner appeared for his sentencing hearing before the undersigned over eight (8) months after his guilty plea was accepted by the magistrate judge and Petitioner confirmed that all of the answers that he had given during his plea hearing were true and that he would

answer those questions the same way if the Court posed them again.[5] Interestingly, Petitioner did

not raise the § 851 issue at sentencing nor did he raise it in his pro se supplemental briefs before

the Fourth Circuit when he argued, only generically, that his guilty plea was not knowing and

voluntary because his trial counsel promised him leniency through statements that were not made

a part of the plea agreement. See United States v. Nunez-Sanchez, No. 08-4224, Pro se Anders

Supplemental Brief at 7, 9-12, ECF No. 74.[6]

For the foregoing reasons, this claim for relief will be dismissed.

B.      Ground Two

Petitioner next argues that his counsel was ineffective in negotiating the drug amount for

which he was to be held responsible and that this error exposed him to the mandatory minimum

10-year term of imprisonment. (3:13-cv-00085. Doc. No. 3: Petitioner's Mem. at 16). This claim

will be dismissed because the drug weight at issue (more than one kilogram of heroin) was

plainly stated in Petitioner's plea agreement, to which he was a signatory, and Petitioner averred

that he understood the quantity for which he would be held responsible and the mandatory

minimum term of 10-years in prison that he faced if convicted. Accordingly, Petitioner is bound

by his sworn statements during his Rule 11 hearing, and before this Court during sentencing, that

---

[5] The Court notes that the Fourth Circuit found Petitioner's guilty plea was knowing and voluntary based on his sworn answers during the Rule 11 hearing, and that his present challenges in this § 2255 proceeding could likely be barred by the law of the case doctrine. However, out of an exercise of caution, because Petitioner has framed his arguments expressly in terms of ineffective assistance of counsel, the merits of each argument will be addressed herein. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976); United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (The law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court.").

[6] Petitioner's contention that his English language barrier affected the knowing and voluntary nature of his plea is unavailing as the Fourth Circuit noted that the charges and possible penalties were properly explained to him through an interpreter during his Rule 11 hearing, and Petitioner's responses indicated that he fully understood the impact of his guilty plea. See Nunez-Sanchez, 453 F. App'x at 321. (Id. at 6-7).

he was in fact responsible for more than one kilogram of heroin.

C.      Ground Three

In this claim, Petitioner maintains that his trial counsel was ineffective in the effort to

challenge the four-level enhancement for his role as a leader of the drug conspiracy under USSG

§ 3B.1.1(a). (3:13-cv-00085, Doc. No. 3 at 25). This argument is without merit as the evidence in

the presentence report clearly supports the enhancement therefore Petitioner cannot demonstrate

prejudice, and more to the point, the Fourth Circuit rejected Petitioner's challenge to the

application of the enhancement after conducting its review of the record therefore he may not

obtain relief on this point in a collateral proceeding.[7] For these reasons, this argument will be

dismissed.

D.      Ground Four

In his final claim, Petitioner contends that his appellate counsel rendered deficient

performance by failing to properly challenge his four-level enhancement for his role as a leader

in the conspiracy, and that his counsel failed to raise the issues that Petitioner presented in his

pro se supplemental briefs on appeal. (Id. at 36-37).

The test for ineffective assistance of appellate counsel is largely the same as it is for trial

counsel. Specifically, "[i]n order to establish a claim that appellate counsel was ineffective for

failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his

counsel's representation fell below an objective standard of reasonableness in light of the

_____

[7] The evidence in the PSR shows that Petitioner was specifically tapped to replace a co-conspirator, Manuel Amador Romero-Ortiz, after Ortiz proved inept in his effort to manage the Charlotte distribution ring. The evidence also showed that the Title III wiretaps were issued for telephones that were utilized by Petitioner to contact co-conspirators in this District and in other states in an effort to direct the drug trafficking activity. (3:06-cr-00353, PSR ¶¶ 29-33).

prevailing professional norms, and (2) that there is a reasonably probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." Bell v.

Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (internal quotations and citations omitted).

Appellate counsel "is entitled to a presumption that he decided which issues were most likely to

afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993); see also

Smith v. Robbins, 528 U.S. 259, 288 (2000) (appellate counsel "need not (and should not) raise

every nonfrivolous claim, but rather may select from among them in order to maximize the

likelihood of success on appeal.") (citing Jones v. Barnes, 463 U.S. 745 (1983)).

Petitioner's claims here must fail because the Fourth Circuit specifically rejected any

challenge to his four-level enhancement, and the Court considered – and rejected – each of his

pro se arguments and he presents no reasons in this collateral proceeding that could explain how

the outcome of his appeal may have been different had his counsel pursued his pro se claims. For

these reasons, this claim will be dismissed.

IV.     CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 Motion is without merit

and it will be dismissed.

**IT IS, THEREFORE, ORDERED** Petitioner's § 2255 Motion to Vacate is **DENIED**

and **DISMISSED with prejudice**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that Petitioner's Motion to Appoint Counsel is **DENIED**.

(Doc. No. 2).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing

Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not

made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is respectfully directed to close this civil case.

**SO ORDERED.**

Signed: November 30, 2015

Robert J. Conrad, Jr.
United States District Judge